408 So.2d 969 (1981)
Howard B. MITCHELL et al., Plaintiffs-Appellees,
v.
Donald C. KILLINS et ux., Defendants-Appellants.
No. 14726.
Court of Appeal of Louisiana, Second Circuit.
December 7, 1981.
Rehearing Denied January 18, 1982.
*970 Guerriero & Anzalone by Rick C. Anzalone, Monroe, for defendants-appellants.
Blackwell, Chambliss, Hobbs & Henry by K. Tod Cagle, West Monroe, for plaintiffs-appellees.
Before PRICE, MARVIN and FRED W. JONES, Jr., JJ.
FRED W. JONES, Jr., Judge.
Defendant owners of a subdivision lot appeal a judgment in favor of other subdivision property owners mandating the removal by defendants of a structure from their lot. Defendants contend the trial judge erred in (1) holding that the structure on their lot violated subdivision restrictions; (2) failing to find that plaintiffs had acquiesced in violations of this nature; and (3) ordering removal of the structure from defendants' lot rather than simply enjoining future violations.
We affirm.
Restrictions governing Claiborne Forest Subdivision, located outside the West Monroe municipal limits, were filed for record in Ouachita Parish in 1960. Included were the following articles pertinent to this litigation:
1.
"LAND USE AND BUILDING TYPE. No lot shall be used except for residential purposes. No building shall be erected, altered, placed or permitted to remain on any lot other than one detached single-family dwelling not to exceed one story in height.

*971 2.
"No home may be constructed on any lot in this Subdivision with a floor area of the main structure thereof, exclusive of open porches and garages, having less than 1150 square feet.
8.
"TEMPORARY STRUCTURES. No structure of a temporary character, trailer, basement, tent, shack, garage, barn or other outbuilding shall be used on any lot at any time as a residence either temporarily or permanently.
15.
"RE-LOCATION OF BUILDINGS. Construction of new buildings only shall be permitted, it being the intent of this covenant to prohibit the moving of any existing building on to a lot and remodeling or converting same into a dwelling unit in this subdivision."
In 1975 the defendants, Donald Killins and Oneta Killins, husband and wife, purchased five lots in Claiborne Forest Subdivision and constructed their residence on one of them. This dwelling was of brick veneer construction, as were the other homes located in the subdivision. On property adjacent to the subdivision Killins has a mobile home park and conducts a mobile home sales business.
In the latter part of 1979 defendants moved onto their subdivision lot adjoining their residential lot a house trailer or mobile home measuring 66 feet by 14 feet. All running gear, including wheels, was removed from underneath the structure and the "tongue" was cut off. A water line was extended from defendants' residence to the mobile home. Since January, 1980 Killins' mother has occupied the described structure as her home.
When complaints by other subdivision owners that the structure placed by defendants on their lot violated subdivision restrictions brought no action,[1] this suit was filed on March 28, 1980 by six of those other property owners praying for judgment ordering removal of the structure.
About six months after filing of this suit, defendants added a back room, a concrete slab and porch to the mobile home, increasing the total interior living space to 1164 feet.[2]
In an excellent written opinion the trial judge construed Articles 1, 8 and 15 of the building restrictions together to "clearly express the intention that every residence must be a one-story structure built on site, of at least a minimum size." He ruled that neither "a `trailer' nor an `existing building' could lawfully be brought onto and `installed' on a subdivision lot for use as a residenceeven temporarily."
Defendants argue that the trial judge's interpretation of the restrictive covenants so as to prohibit the placement of an immobilized mobile home on their lot is "out of step with the times."
It is recognized that restrictions affecting immovable property are to be strictly construed, with any doubt resolved in favor of unencumbered property use. However, when differences arise as to the extent or limitation of restrictions, courts must look to the expressed intention of the party encumbering the property as set forth in the instrument embodying the restrictions, giving due consideration to the entire context of the document. Those purchasing property in the subdivision are entitled to presume that subdivision restrictions will be fairly and faithfully complied with. See Salerno v. DeLucca, 211 La. 659, 30 So.2d 678 (1947).
In Smith v. DeVincent, 322 So.2d 257 (La.App.2d Cir. 1975) the defendants appealed *972 a judgment ordering them to remove trailers or mobile homes from their respective lots. Responding to appellants' argument that immobilized mobile homes should be distinguished from house trailers, we observed:
"[W]e also take note that occasionally they [mobile homes] may be immobilized on a particular location, but nonetheless, remain capable of being mobilized without too much effort and expense. They are not so much `constructed' or `assembled' even in a small part on the location the owner desires but are `connected' to sewerage and utilities."
Discussing building restrictions in general we stated:
"While all restrictions are sometimes loosely referred to as building restrictions, it should be noted that restrictions generally fall into two classes: a `building' restriction, which limits the type and size of structures which may be placed on the property, and a `use' restriction, which limits the uses which may be made of permitted structures."
We then concluded that the restrictions involved in that case pertained to "use" rather than "building".
In the case at bar the trial judge correctly interpreted the building restrictions to express the subdivider's intention that every residence be constructed on site. In fact, Article 15 clearly proscribes the "moving of any existing building on to a lot," which defendants obviously did here. This is a "building" restriction. Further, Article 8 prohibits the "use" of such a structure as a residence. Consequently, we agree with the trial judge that the placing of the house trailer or mobile home on their lot by defendants constituted a violation of a "building" restriction and the occupation of the structure as a dwelling by Killins' mother violated a "use" restriction.
Appellants next argue that plaintiffs waived their right to enforce these subdivision restrictions because of their failure to object to other similar violations.
As noted by the trial judge, most of the claimed "violations" involved recreational vehicles parked adjacent to residences. There was no evidence that these vehicles were being occupied as residences. Therefore, their presence did not constitute a violation of subdivision restrictions.
Several other structures, which defendants contend violated subdivision restrictions, simply appear (from photographs filed in the record) to be outbuildings or storage sheds. Examination of the subdivision restrictions does not reveal any prohibition of structures of this nature, as the trial judge also properly concluded.
To summarize on this point, defendants did not prove the existence of other violations of subdivision restrictions. Even if one or more of the last described structures did conceivably violate those restrictions, these violations were so insubstantial as to be inconsequential. As pointed out in East Parker Properties, Inc. v. Pelican Realty Co., 335 So.2d 466 (La.App.1st Cir. 1976):
"... [T]here is no abandonment of subdivision restrictions unless violations have been such that there has been a subversion of the original scheme of the subdividers, resulting in a substantial change in the intended nature of the subdivision."
Also see Allen v. Forbess, 345 So.2d 950 (La.App.2d Cir. 1977).
Defendants' final argument, that the mandatory injunction ordering removal of the offending structure is not authorized by the subdivision covenants, is without merit.
It is axiomatic that a valid property restriction is enforceable by injunctive relief, including a mandatory injunction directing removal of the objectionable structure. Chapman v. Fisher, 370 So.2d 162 (La.App. 3rd Cir. 1979). Otherwise, the purpose of a subdivision restriction would be completely thwarted every time the violation became an accomplished fact. We find, then, that the action of the trial judge in granting a mandatory injunction ordering removal of the mobile home was appropriate under these circumstances.
*973 For these reasons we affirm the judgment of the district court, at appellants' cost.
NOTES
[1] There was evidence in the record that on two prior occasions Killins had removed house trailers or mobile homes from this same lot in response to complaints from other subdivision property owners.
[2] Prior to this addition, the living area of the mobile home was less than the 1150 square feet prescribed as a minimum requirement by Article 2 of the property restrictions.