639 So.2d 1188 (1994)
MARINER'S VILLAGE MASTER ASSOCIATION, INC.
v.
CONTINENTAL PROPERTIES, a Louisiana Partnership, Martin O. Miller, II, James T. Davis and Benjamin D. Saunders.
No. CA 93 1530.
Court of Appeal of Louisiana, First Circuit.
May 20, 1994.
Opinion Denying Rehearing August 9, 1994.
*1189 Justin A. Zitler, New Orleans, for plaintiff/appellant.
John F. McDonald, III, Mandeville, for defendants/appellees.
Before CARTER, GONZALES and WHIPPLE, JJ.
WHIPPLE, Judge.
This suit arose from a dispute between the parties as to whether defendants, Continental Properties, a Louisiana Partnership, Martin O. Miller, II, James T. Davis, and Benjamin D. Saunders were liable for assessments levied against them, by plaintiff, Mariner's Village Master Association, Inc., a non-profit association composed of the owners of property in a subdivision known as Mariner's Village. The trial court granted judgment in favor of plaintiff, and against defendant, Continental Properties, but limited plaintiff's recovery to assessments levied within three years prior to the filing of suit. From this judgment, plaintiff appealed. Defendant, Continental Properties answered the appeal. For the following reasons, we affirm in part and reverse in part.

FACTS AND PROCEDURAL HISTORY
On February 16, 1978, Beneficial Standard Mortgage Investors, the original owner and developer of a subdivision known as Mariner's Village ("the Property") and located in St. Tammany Parish, executed and recorded an "Act Creating Master Deed Restrictions *1190 and Covenants" ("the Master Deed") for the Property. The stated purpose of the Master Deed was "to subject the Property to certain covenants, restrictions, privileges, and obligations... for the benefit of the Property and the subsequent owners thereof." One of the obligations imposed upon each owner of a portion of the Property was the maintenance of the Property, "in good order and repair."
Pursuant to the provisions of the Master Deed, the Mariner's Village Master Association, Inc. ("the Master Association") plaintiff herein, was formed. Some of the duties of the Master Association, as enumerated in the Master Deed, were to enforce and implement the provisions of the Master Deed, to maintain and repair any portion of the Property when the owner failed to do so, and to make assessments as provided in the Master Deed.
The Master Deed granted the Master Association the authority to assess costs expended by the association for maintenance and repair against the owner of any portion of the Property, for the owner's failure to maintain his property in accordance with the requirements of the Master Deed. The Master Deed further empowered the Master Association to assess its members for costs and expenses attendant to the association's performance of its duties.
On September 13, 1979, Peter C. Rizzo, Martin O. Miller, II, James T. Davis and Benjamin Saunders, purchased Parcel "J-1" of the Property from Alamand Corporation. The sale was made and accepted subject to the restrictions and covenants of the February 16, 1978 Master Deed. The Act of Sale acknowledged the Master Deed and amendments thereto and also contained two additional restrictive covenants.[1]
Rizzo and his wife, Gayle Reynolds Rizzo, later sold their interest in Parcel J-1 to Miller, Davis and Saunders. On January 25, 1984, Miller, Davis and Saunders, and their wives, executed a "Counter Letter", subsequently recorded, which stated that defendants and their wives had no interest in Parcel J-1, which was purchased for the account of Continental Properties, a Louisiana partnership of which defendants were the general partners. The document further stated that the parties agreed to transfer any interest in Parcel J-1 to Continental Properties, effective upon execution of the instrument.
Thereafter, the Master Association levied regular assessments against Continental Properties, as owner of Parcel J-1. Additionally, special assessments were levied against Continental Properties for expenses incurred by the Master Association for maintaining the greenbelt for Parcel J-1, after Continental Properties failed to do so. Continental Properties did not pay any of these assessments.
On February 7, 1991, plaintiff filed a Lien and Privilege on Immovables against Parcel J-1 in the mortgage records of St. Tammany Parish, for the unpaid assessments. Subsequently, on March 4, 1991, plaintiff filed a petition entitled "Suit to Enforce Liens ($13,565.14) and on Open Account."[2] Defendants contended that Continental Properties, owner of Parcel J-1, was not a member of the Master Association and, thus, plaintiff had no right to impose any assessments upon Continental Properties for Parcel J-1. Defendants alternatively contended that if Continental Properties was deemed to be a member, at least a portion of plaintiff's claims for past due assessments had prescribed.
By stipulation of the parties, the matter was submitted to the trial court for decision based upon the record, including a recitation of written stipulations and exhibits submitted by the parties and trial memoranda. In written reasons for judgment, filed December 18, 1992, the trial court interpreted the provisions of the Master Deed to include defendants *1191 as members. Thus, the trial court concluded, defendants were obligated to pay the assessments made by the Master Association. However, the trial court also concluded that the three year prescriptive period of LSA-C.C. art. 3494 was applicable and, thus, limited plaintiff's recovery to assessments levied within the three years prior to the date of judicial demand. Accordingly, judgment was rendered in favor of plaintiff in the amount of $3,810.45, together with interest from judicial demand, attorney's fees in the amount of 20% of principal and interest, and all costs.
The initial judgment, signed by the trial court on February 9, 1993, was rendered against Continental Properties, Miller, Davis and Saunders, "in solido." However, by Amended Judgment signed February 26, 1993, the words "in solido" were deleted from the judgment. The trial court then signed a second amended judgment (or third judgment) on April 13, 1993, deleting the names of defendants, Miller, Davis and Saunders, from the judgment and casting Continental Properties alone in judgment.
Plaintiff appeals, alleging that the trial court erred: (1) in failing to apply the ten-year prescription period of LSA-C.C. art. 3499 for personal actions, and (2) in failing to name the partners of Continental Properties, Miller, Davis and Saunders, in the judgment in their individual capacity. Continental Properties answered the appeal, alleging that the trial court erred in holding it liable for any dues or assessments levied by the Master Association.

JUDGMENT AT ISSUE ON APPEAL
At the outset, we are constrained to address the procedural posture of the record before us and to determine whether this case is properly before this court on appeal, and, if so, which judgment is presented for review. Three judgments were signed by the trial court in this matter. The first judgment was signed by the trial court on February 9, 1993. Thereafter, on February 19, 1993, defendant, Continental Properties, filed a motion for new trial which was set for hearing on April 13, 1993. On February 26, 1993, while the motion for new trial was still pending, the trial court signed an amended judgment. On March 8, 1993, plaintiff then filed a "Petition for Appeal" from the February 26, 1993 amended judgment. On March 12, 1993, the trial court signed an order granting plaintiff a devolutive appeal from the February 26, 1993 amended judgment, despite the fact that it had not yet acted on Continental Properties' motion for new trial.
On April 13, 1993, by agreement of the parties, the trial court signed a second amended judgment and also signed an order vacating the two previous judgments and dismissing defendant's motion for new trial. Also on that day, pursuant to a "Motion to Correct Irregularities and Informalities in the Trial Record" filed by the parties, the trial court signed an order amending the order of appeal to reflect that plaintiff was granted an appeal from the second amended judgment (third judgment) rendered by the court on April 13, 1993.
Ordinarily, the trial court is divested of jurisdiction when it renders an order granting an appeal. LSA-C.C.P. art. 2088. However, in the instant case, the trial court was not divested of jurisdiction when it signed the initial order granting plaintiff an appeal on March 12, 1993, because the trial court had not yet acted on defendant's motion for new trial. See Petitto v. McMichael, 552 So.2d 790 (La.App. 1st Cir.1989). Thus, the trial court retained jurisdiction over the matter when it rendered the subsequent judgments and orders. However, the inquiry does not end with the resolution of this issue alone.
As this court stated in Preston Oil Company v. Transcontinental Gas Pipe Line Corporation, 594 So.2d 908, 911 (La.App. 1st Cir.1991):
LSA-C.C.P. art. 1951 provides that a final judgment may be amended by the trial court at any time on its own motion or pursuant to the motion of any party: to alter the phraseology, but not the substance, of a judgment; or to correct errors in calculation. In other words, a judgment may be amended under LSA-C.C.P. art. 1951 where the amendment takes nothing from or adds nothing to the original judgment. *1192 However, when an amendment to a judgment adds to, subtracts from, or in any way affects the substance of the judgment, such judgment may not be amended under LSA-C.C.P. art. 1951. A change in visitation privileges allegedly to reflect the judge's written reasons has been determined to be a substantive change. A change in a judgment which alters the amount of relief that a party is entitled to receive is a substantive change. A change adding a reference to a mortgage is substantive. (Citations omitted.)
In the instant case, the elimination of solidary liability and the subsequent deletion of the individual partners from the original judgment of February 9, 1993, after it had been signed were substantive changes which took away something from the original judgment. Under LSA-C.C.P. art. 1971, a new trial may be granted upon contradictory motion of any party or by the court on its own motion. The Louisiana Supreme Court has recognized that, on his own motion and with the consent of the parties, the trial judge may amend a judgment substantively, thereby creating a new, final judgment from which the delay for taking an appeal commences to run anew. Preston Oil Company, 594 So.2d at 912 (citing Villaume v. Villaume, 363 So.2d 448, 451 (La.1978)); see also Labove v. Theriot, 597 So.2d 1007, 1010 (La.1992). Thus, we conclude that plaintiff's appeal from the second amended judgment (third judgment) rendered by the trial court on April 13, 1993 is properly before us.

LIABILITY OF CONTINENTAL PROPERTIES FOR DUES AND ASSESSMENTS

(Defendant's Assignment of Error No. 1)
Continental Properties challenges the trial court's determination that it was liable for dues and assessments levied against Parcel J-1 by the Master Association, averring that it was not a member of the Master Association and, thus, not liable for such assessments. Plaintiff contends, on the other hand, that when defendants purchased Parcel J-1, the sale was made and accepted subject to the restrictions and covenants of the Master Deed, including membership in the Master Association.
Building restrictions are charges imposed by the owner of an immovable in pursuance of a general plan of development governing building standards, specified uses and improvements. LSA-C.C. art. 775. Building restrictions are real rights inuring to the benefit of all other lots within the subdivision under the general plan of development. LSA-C.C. art. 777; Lake Terrace Property Owners Association v. City of New Orleans, 567 So.2d 69, 74 (La.1990).
Restrictive covenants are to be strictly construed, with any doubt resolved in favor of unrestricted property use. Cashio v. Shoriak, 481 So.2d 1013, 1015 (La.1986). However, apart from the rule of strict interpretation, documents establishing building restrictions are subject to interpretation and enforcement as are contracts. Village Square Shopping Center Association v. Nelson, 522 So.2d 163, 165 (La.App. 4th Cir.), writ denied, 526 So.2d 793 (La.1988). When differences arise as to the extent or limitation of restrictive covenants, courts must look to the expressed intention of the party encumbering the property as set forth in the instrument embodying the restrictions, giving due consideration to the entire context of the document. Mitchell v. Killins, 408 So.2d 969, 971 (La.App. 2nd Cir.1981).
Continental Properties contends that it is not liable for assessments because it is not a member of the Master Association. However, the assessments sued for herein involve not only general assessments, levied against all members of the Master Association, but also include special assessments levied against Continental Properties as the owner of a portion of the property for failure to maintain the property in accordance with the Master Deed.
As stated above, the Master Deed provides that "each owner of a portion of the Property shall maintain his property in good order and repair and no building or other structure shall be permitted to fall into disrepair." (Emphasis added.) Clearly, this provision imposes a duty on all land owners, regardless of membership status in the Master Association, *1193 to maintain their property in good order, by virtue of their status as owners. Moreover, as part of the general authority vested in the Master Association, the Master Deed specifically empowers the Master Association to perform any maintenance or repair upon properties in those instances where the owner fails to do so and to assess the owner for costs expended by the Master Association for such maintenance and repair. Clearly, defendants purchased Parcel J-1 subject to the restrictions and covenants of the Master Deed. Thus, regardless of its status as a member of the Master Association, Continental Properties is liable for the assessments levied against it for its failure, as the owner of a portion of the Property, to maintain its greenbelt area.
The issue of defendants' liability for general assessments is more difficult. The Master Deed provides that "[t]he Master Association shall have the power to assess its members for the costs and expenses of performing each of its duties set forth in this Master Deed." (Emphasis added.) "Membership" is defined in the Master Deed as: "Owner, the owner of any Parcel of the Property which has not been subjected to individual restrictive covenants and each Parcel Association created pursuant to the restrictive covenants covering such Parcel shall be deemed a member of the Master Association."
Continental Properties contends that because it is the owner of a parcel which has been subjected to additional individual restrictive covenants, it is excluded from the definition of membership within the Master Deed. The trial court disagreed, noting that the definition of membership also included the language "and each Parcel Association created pursuant to the restrictive covenants covering such Parcel." (Emphasis added.) The trial court concluded that "a fair reading of this language includes both those owners which are subject to restrictive covenants and those that are not. Therefore, defendants are members regardless of the restrictive covenants and are obligated to pay the Association for the costs and expenses as stipulated are [sic] outstanding." Considering this provision and giving due consideration to the entire context of the document, including the voting rights clearly granted to the property owners, as members, including the owners of Parcel J-1, we cannot say that the trial court erred in interpreting the definition of membership to include the owners of Parcel J-1, despite additional restrictive covenants covering that Parcel. Thus, we likewise conclude that the Master Association had the authority to levy regular assessments against Continental Properties, as a member of the Master Association.
This assignment of error lacks merit.

PRESCRIPTION

(Plaintiff's Assignment of Error No. 1)
The trial court concluded that plaintiff's action for the assessments fell under the actions enumerated in LSA-C.C. art. 3494, providing a three-year prescriptive period.[3] Plaintiff challenges this finding, arguing that the ten year prescriptive period for a personal action, as set forth in LSA-C.C. art. 3499, should apply.
A personal action lies against him who has bound himself towards another, personally and independently of the property which he possesses. Tall Timbers Owners' Association v. Merritt, 376 So.2d 586, 588 (La.App. 4th Cir.1979). In support of its assertion that the assessments were a personal obligation, giving rise to a personal action, plaintiff cites Village Square Shopping Center Association v. Nelson, 522 So.2d 163. In Village Square Shopping Center Association, the Fourth Circuit Court of Appeal determined that an action to collect assessments levied pursuant to building restrictions was a personal action subject to the ten-year prescriptive period of Civil Code article 3499, rather than an action on open account subject to the three-year prescriptive period of Civil Code article 3494. In *1194 reaching its conclusion, the appellate court relied on language in the restrictions which provided that the association "`may, in addition to the personal action against such members, cause to be recorded ... a lien' against the property of such a member." Village Square Shopping Center Association, 522 So.2d at 168.
In the instant case, the trial court determined while the contract in Village Square Shopping Center Association specifically characterized the action as a personal action, the documents in the instant case do not contain such language. We disagree. The Master Deed specifically grants the Master Association the power to assess its "members" with general assessments and "owners" of any portion of the property with special assessments for failure to comply with the maintenance requirements of the Master Deed. Moreover, the Master Deed further provides that "[e]ach regular, special or parcel assessment levied hereunder shall be a debt and obligation of the Parcel against which it is levied and of the owner of or Parcel Association for, said Parcel." (Emphasis added.)
Thus, we conclude that by purchasing Parcel J-1 subject to the Master Deed, defendants bound themselves personally for the assessments. See Village Square Shopping Center Association, 522 So.2d at 168; Town South Estates Homes Association, Inc. v. Walker, 332 So.2d 889, 890 (La.App. 2nd Cir.1976). We therefore reverse the trial court's judgment inasmuch as it applies the three-year prescriptive period rather than the ten-year prescriptive period for personal actions.
Even applying the ten-year prescriptive period for personal actions, we find that plaintiff's claim for assessments in the amount of $298.69 is prescribed, inasmuch as they were levied against defendant more than ten years prior to the filing of suit herein. Therefore, plaintiff is entitled to assessments in the amount of $6,998.25.

ATTORNEY'S FEES
Attorney's fees are not allowed in Louisiana except where authorized by statute or contract. Quealy v. Paine, Webber, Jackson & Curtis, Inc., 475 So.2d 756 (La.1985). Having concluded that plaintiff's cause of action is not based on open account, we find no statutory or contractual basis for an award of attorney's fees herein. However, defendants did not appeal or answer the appeal. Accordingly, the issue of whether the trial court erred in awarding attorney's fees herein is not properly before us and will not be disturbed on appeal. Bergeron v. K-Mart Corporation, 540 So.2d 406, 408 (La. App. 1st Cir.), writs denied, 544 So.2d 408, 412 (La.1989).

LIABILITY OF THE PARTNERS OF CONTINENTAL PROPERTIES

(Plaintiff's Assignment of Error No. 2)
In this assignment of error, plaintiff avers that the trial court erred in failing to render judgment against the partners of Continental Properties, Miller, Davis and Saunders, in their individual capacity in the April 13, 1993 second amended judgment.
A partnership is the principal obligor for its debts and, thus, is primarily liable for its debts. LSA-C.C. art. 2817. A partner is bound for his virile share of the debts of the partnership, although he may plead discussion of the partnership's assets. LSA-C.C. art. 2817; Falcon Drilling Company v. Transamerican Energy, Ltd II, 622 So.2d 745, 747 (La.App. 3rd Cir.1993). However, the partners of an existing partnership may not be sued on a partnership obligation unless the partnership is joined as a defendant. LSA-C.C.P. art. 737.
The partners, Miller, Davis and Saunders, were originally held to be liable in solido with the partnership Continental Properties in the February 9, 1993 judgment. By amended judgment dated February 26, 1993, the words "in solido" were deleted. However, the partners contended the position that although they were named in plaintiff's petition, they were not named in their capacity as partners, and therefore, they could not be held liable for this partnership debt. The trial court apparently agreed, and the second amended judgment, dated April *1195 13, 1993, deleted any reference to Miller, Davis and Saunders from the judgment.
Miller, Davis and Saunders were named as defendants in plaintiff's petition, but they were named in their capacity as owners of Parcel J-1, rather than as partners of Continental Properties. Plaintiff argues that this omission from its petition should not prevent the partners from being cast individually in the judgment. We agree.
Pursuant to LSA-C.C.P. art. 737, the partners may be sued along with the partnership on a partnership obligation. Falcon Drilling Company, 622 So.2d at 747. Miller, Davis and Saunders were, in fact, named individually in plaintiff's petition. Moreover, C.C.P. art. 737 does not set forth any requirement that the word "partner" must be used when referring to the partners as individual party defendants.
Finally, LSA-C.C.P. art. 865 dictates that "[e]very pleading shall be so construed as to do substantial justice." We find that Miller, Davis and Saunders, as named defendants, were sufficiently placed on notice as to their potential liability in this suit, regardless of the fact that the word "partner" was not used in the petition. Therefore, we find that the trial court erred in failing to render judgment against the partners, individually, and the judgment should be amended accordingly.

CONCLUSION
For the foregoing reasons, we affirm the trial court's finding that Continental Properties, as owner of Parcel J-1 and member of the Master Association, is liable for assessments levied against it by the Master Association. However, we reverse the trial court's finding limiting the claim for assessments to three years prior to the date suit was filed. We further render judgment against the partners in their individual capacity. Thus, the April 13, 1993 judgment is amended to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, Mariner's Village Master Association, and against Continental Properties, a Louisiana Partnership, and Martin O. Miller, II, James T. Davis and Benjamin D. Saunders, each for their virile share as partners of Continental Properties, in the principal sum of $6,998.25, together with interest thereupon from date of judicial demand, until paid, and all costs of these proceedings.
In all other respects, including the amount previously awarded as attorney's fees, the judgment of April 13, 1993 is affirmed. Costs of this appeal are assessed against defendants.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
CARTER, J., concurs.

ON APPLICATION FOR REHEARING
Rehearing denied.
In its application for rehearing, defendant, Continental Properties, contends that this court erred in not reversing the trial court's award of attorney's fees, after having concluded that no statutory or contractual basis for an award of attorney's fees existed.
In our May 20, 1994, opinion, this court incorrectly stated that defendant had not appealed or answered the appeal and concluded that the issue of the attorney's fee award was not properly before us. Defendant did answer the appeal, and in its answer to appeal, raised one assignment of error: the trial court erred in finding that defendant was indebted to plaintiff in any amount whatsoever. Defendant avers that through this assignment of error, it raised the issue of its liability to plaintiff for attorney's fees.
However, in its brief to this court, defendant listed its assignment of error as follows: "The trial court improperly held Appellee, Continental Properties, a Louisiana Partnership liable for dues and assessments." (Emphasis added.) Moreover, defendant did not brief or address the issue of its liability for attorney's fees. Thus, even if the issue of attorney's fees was in fact properly raised, it is deemed abandoned. Uniform Rules, Courts of Appeal, Rule 2-12.4; Winget v. Colfax Creosoting Co., 626 So.2d 370, 372 *1196 (La.App. 3rd Cir. 1993), writ denied, 633 So.2d 580 (La. 1994).
REHEARING DENIED.
NOTES
[1] The additional restrictions prohibited use of the property as a state-chartered savings and loan association for a period of 18 months and prohibited reduction of the depth of the greenbelt to less than ten feet for a period of ten years.
[2] In addition to claims for unpaid assessments and enforcement of a lien against Parcel J-1, the petition also asserted a claim for unpaid assessments for Parcel J-2, which was also allegedly owned by defendants. However, plaintiff later moved to voluntarily dismiss its claims relating to Parcel J-2 after fees relating to that parcel were paid. An order dismissing those claims was signed on September 2, 1991.
[3] Although the trial court did not specify under which action enumerated in C.C. art. 3494 it classified plaintiff's cause of action, we presume, given that plaintiff entitled its petition "Suit to Enforce Liens ... and on Open Account," that it characterized plaintiff's action as a suit on open account.